## STEVENS *v.* WILLIAMS ET AL.

TAXES.—*Sale for Delinquent Taxes.*—*Statutory Construction.*—A statute authorizing the sale of lands for delinquent taxes must be strictly construed.

SAME.—*Private Sale by Town Marshal Void.*—*Lien.*—A sale of lands, by the marshal of an incorporated town, at private sale, for delinquent taxes assessed by the town, is absolutely unauthorized and void; nor can the purchaser enforce a lien for, or recover back, the purchase-money.

From the Wayne Circuit Court.

*C. H. Burchenal* and *D. W. Mason,* for appellant.

*H. C. Fox* and *J. L. Rupe,* for appellees.

BIDDLE, J.—The complaint in this case originally consisted of three paragraphs. Demurrers for want of facts were sustained to the second and third paragraphs; whereupon the plaintiff excepted to the ruling, withdrew his first paragraph, and stood by the demurrer. Judgment and appeal.

The second and third paragraphs of the complaint present the same question; but, as the averments are more particularly made, and are fuller, in the second paragraph than in the third, we set out the second at length, as follows:

"The said plaintiff, Thomas B. Stevens, further complains of said defendant Alfred B. Williams, and says, that at all times during the years 1872, 1873 and 1874, the town of Cambridge City was, and still is, a town, duly incorporated under and by virtue of the general law of said State for the incorporation of towns; that, at all times during the years above named, the said defendant was the owner of the following described real estate, situate, lying and being within the corporate limits of said town, and liable for taxation for municipal purposes thereon, for each of said years, to wit: Lots number 31, 32, 33, 38, 39 and 40, in the old plat of said town of Cambridge City, east of the river and north of the National road; that, before the

third Tuesday in May in each of said years, the Board of Trustees of said town determined and fixed the amount of general tax for municipal purposes for the current year of each of said years respectively; and, before the second Tuesday of June in each of said years, the assessor of said town did assess all property liable to taxation in said town, including the said real estate of said defendant, under and according to the rules and regulations prescribed by said board, and said assessor did make return of his assessment roll in each of said years, with the said real estate of defendant thereon listed and assessed, to the Board of Trustees of said town, on or before the second Tuesday in June of each of said years respectively; that thereupon, in each of said years, the Board of Trustees of said town did cause the clerk thereof to put up notices in three or more public places in said town, stating that the assessment roll is returned and open for inspection, and that, on a day and at a place specified in such notice, the trustees would hear and decide all complaints of and appeals from the acts of said assessor; that the assessment roll for each of said years was duly corrected and completed, and, when such assessment was so corrected and completed in each of said years, the Board of Trustees of said town, at the proper time in each of said years, did levy a tax upon the taxable property of said town, including said real estate of said defendant, to such amount as was necessary, not exceeding fifty cents on the hundred dollars valuation thereof; and said board did then and there, in each of said years, set opposite the name of each person taxed a description and valuation of the property charged therewith, and the amount of tax assessed against each person, and did then and there, in each of said years, set opposite the name of said defendant, on said assessment roll, a description of the said real estate owned by him as aforesaid, and the valuation thereof, as assessed and valued by said

assessor for each year respectively, and the amount of the tax assessed against said defendant thereon in each of said years respectively, and, when such tax list was made in each of said years, the said board caused a copy thereof to be delivered to the marshal of said town for the time being in each of said years, each of said copies having a warrant annexed under the seal of said corporation, signed by the president and a majority of the trustees, and attested by the clerk, commanding the marshal to collect the taxes specified in his duplicate within ninety days, and make return of said warrant to the treasurer of said town; that thereupon, in each of said years, the marshal of said town proceeded with diligence in the collection of said taxes so appearing on said duplicate, but was unable to collect the taxes against said defendant in each of said years, for the reason that said defendant, during all of said time, was a non-resident of said county, and had no personal property therein subject to seizure and sale therefor; and the said marshal, between the 15th of December and the 31st of December in each of said years of 1872, 1873 and 1874, returned and recorded the said taxes so unpaid as delinquent, and made out and recorded, in a book provided for that purpose, a list of all lands returned and remaining delinquent for taxes, including the said real estate of the defendant as described in the tax duplicate as aforesaid for such years respectively, and charging thereon the amount of said delinquent tax, with interest and penalty of ten per cent on such taxes, and certified to the correctness thereof, with the date when the same was recorded, and signed the same officially; and the said marshal, immediately after the 31st of December in each of said years 1873 and 1874, caused a copy of such delinquent list for such years respectively to be made up and published for four weeks successively, once in each week, in a newspaper having general circulation in said

town and county, to which list so published was attached, and in like manner published, a notice that so much of said lands as may be necessary to discharge the taxes, interest and damages then and there due thereon at the time of sale, would be sold at public auction at the door of the council chamber in said town, the same being then and there the place of meeting of the Board of Trustees of said town, on the second Monday in February next thereafter; and on the second Monday in February in each of the years of 1874 and 1875, the said marshal, pursuant to said notice, commenced the sale of such lands so advertised in each said year respectively, and at such sale he put up and offered at public sale, at the door of said place of meeting of said Board of Trustees, the said real estate of said defendant, offering each lot separately and severally, and receiving no bid whatever for either of said lots, or any part thereof, at either of said sales, the real estate and every part thereof remained unsold; and the said real estate so remained unsold until the 1st day of May, 1875, on which day the amount of delinquent taxes charged against said real estate as aforesaid, with interest thereon at the rate of ten per cent. per annum from the date at which said land was so offered, amounted to the sum of $326.50, all of which then and there remained due and unpaid; and the defendant then and there had no personal property in said county, out of which any part of said tax could be made by seizure and sale thereof; that on said May 1st, 1875, the said taxes being unpaid and due as aforesaid, and said real estate remaining unsold as aforesaid, Joseph and David Kimmel then and there applied to Ira L. Prichard, then marshal of said town, to purchase the said real estate at private sale, at and for the amount of the due and unpaid taxes against the same as aforesaid, and said marshal being unable to find any person who would pay the amount of said

taxes so due for any less than the whole of said real estate, then and there at the door of the council chamber, the same being the place of meeting of the said Board of Trustees of said town, bargained and sold said real estate to the said J. & D. Kimmel, at and for the said sum of $326.50, which sum the said purchasers then and there paid to said marshal, and the said marshal then and there executed to the said J. & D. Kimmel, a certificate setting out, in substance, the facts aforesaid, in manner and form as prescribed by law; and the said J. & D. Kimmel afterwards assigned and transferred the said certificate to the plaintiff for a valuable consideration; and afterwards, to wit, on the 19th day of May, 1877, the said defendant, or any other person, not having redeemed the said real estate, or any part thereof, from said sale, the said plaintiff produced the said certificate to Wilson I. Marquis, who was then and there the duly elected and qualified marshal of said town, and then and there demanded of said marshal a deed for said real estate according to law, and the said marshal then and there executed to said plaintiff a deed of conveyance of the said real estate, a copy of which is herewith filed and marked 'Exhibit A,' and made a part hereof; and the plaintiff has ever since held the title and estate so conveyed to him. And plaintiff says that, although he thus became the owner of and was lawfully entitled to the possession of said real estate, the said defendant unlawfully continued to hold the same and is now in possession, and unlawfully excluded the plaintiff therefrom, and has so unlawfully kept plaintiff out of possession thereof ever since said 1st of May, 1875, to the damage of the plaintiff $500.

"Wherefore plaintiff demands judgment for the recovery of the possession of the said real estate, and for $500, his damages as aforesaid, and for all other proper relief."

In addition to the averments in the second paragraph of complaint, as above, and the prayer for relief therein, the

third paragraph prays, that, " If the court, upon investigation, should find or hold that the sale, made as aforesaid, was or is in any respect illegal and invalid, so that said plaintiff is not entitled to the possession of said real estate by virtue of said sale and conveyance, will the court order and decree that the said defendant do pay to the said plaintiff the said sum of $326.50, with the interest thereon, according to law, from and after said May 1st, 1875, within such reasonable time as shall be determined by the court, and, in default of payment thereof, will the court decree that said lots be sold therefor, or sufficient thereof to pay the said sum and interest and costs, and will the court grant to the plaintiff all other proper relief? "

The question in the case may be stated in very few words : Is the sale set forth in the second paragraph of the complaint valid ?

It is not seriously contended but that the facts are well pleaded; the question is, does the law authorize such a sale ? The appellant bases the sale upon the following sections of the act providing for a uniform assessment and collection of taxes.

" Sec. 247. Any forfeited or unsold tax land may be purchased at private sale, upon application therefor to the proper county auditor, and upon paying to the county treasurer, on the certificate of the county auditor, the amount for which the same was or should have been first offered, with interest upon said amount at ten per cent. per annum, to be computed from the date at which said land was or should have been so offered to the time of making such application and payment.

" Sec. 248. Upon application and payment being made as above provided, the auditor shall execute to such purchaser a certificate conveying the same interest in and to said lands as would be acquired by virtue of an original public sale, as herein provided." 1 R. S. 1876, p. 127.

The power of a town marshal to sell property for delinquent taxes, as well as that of a county auditor, is derived, the appellant thinks, from the following section in the act for the incorporation of towns:

"Sec. 35. The marshal shall collect the taxes on said duplicate when so required, and shall have the same power to enforce collections, and shall be governed by the same rules and regulations, as county treasurers and county auditors, and shall have authority in like manner, to collect by distress and sale, and to make conveyances and certificates of real estate sold by virtue of such sale, which sale, if at a county-seat, shall be at the door of the court-house, or place of holding courts, and if not at the county-seat, it shall be held at the door of the town-hall, or place of meeting of the Board of Trustees, and the clerk of said board shall perform the like duties, at said sale, as are required of the county auditor, at a sale for State and county taxes, and all deeds or conveyances for lands so sold for taxes shall be *prima facie* evidence of the validity of such purchase." 1 R. S. 1876, p. 882.

The right to recover for taxes paid on a void tax sale, as claimed in the third paragraph of the complaint, is founded on sec. 257, 1 R. S. 1876, p. 129, which need not be set out.

In the consideration of this question, we set out in the beginning with the principle, that a statute authorizing the sale of lands for delinquent taxes must be strictly construed. This doctrine is so well understood, and so universally accepted, that we do not discuss it or cite authorities in its support. We must notice, also, that the act for incorporating towns, under which the marshal claimed his power to act in the present case, was approved June 11th, 1852; and that the act for the assessment and collection of taxes, under which it is claimed the county auditor derives power to sell lands for delinquent taxes at private sale, was approved December 21st, 1872. The general act for

the assessment and collection of taxes, in force at the time the above act, approved June 11th, 1852, was passed, was chapter 12 of the Revised Statutes of 1843—more particularly as to delinquent taxes, article 7 of said chapter. R. S. 1843, p. 222. In these statutes no power can be found authorizing a county auditor to sell land for delinquent taxes at *private* sale. Indeed, as far as we are informed, the first attempt by the Legislature to grant such a power to a county auditor is found in the act approved December 21st, 1872, above noticed. There is no mention of such a power in the act for the assessment and collection of taxes, approved June 21st, 1852, and passed at the same session with the act approved June 11th, 1852, under which such a power is claimed for a town marshal, in the present case. There being no law authorizing a county auditor to sell lands for delinquent taxes at *private* sale, in force at the time the act of June 11th, 1852, was approved, it·can not be supposed that the Legislature meant to clothe a town marshal with such a power by section 35 of the latter act, merely by enacting that a town marshal should " be governed by the same rules and regulations, as county treasurers and county auditors," for the plain reason that county treasurers and county auditors had no such power at that time. But the appellant claims that the act of March 11th, 1875, which was in force at the time the sale in controversy was made, connects said section 35 with the act approved December 21st, 1872, so. as to clothe a town marshal with the power to make such a sale. The section under which this power is claimed is as follows:

"Sec. 2. Hereafter the general law of the State and amendments thereto, approved December 2d, 1872, for the uniform assessment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable : *Provided*, That.all city taxes shall be paid on or before the third Monday in April in each year." 1 R. S. 1876, p. 339.

Conceding the constitutionality of sections 247 and 248, authorizing the private sale of lands by the county auditor for delinquent taxes—a question which we do not decide—and conceding that section 2, above cited, couples section 35 of the act for incorporating towns directly with sections 247 and 248 of the general act for the assessment and collection of taxes, we do not think that the language of section 35 would authorize the town marshal to make a private sale of lands for delinquent taxes. The words are inapplicable to a private sale, and forbid such an interpretation of their meaning, or such a construction of the section. It declares that such sale, " if at a county-seat, shall be at the door of the court-house, or place of holding courts, and if not at the county-seat, it shall be held at the door of the town-hall, or place of meeting of the board of trustees, and the clerk of said board shall perform the like duties, at said sale, as are required of the county auditor, at a sale for State and county taxes." These words are wholly inapplicable to a private sale and plainly mean a public sale. Keeping in mind the principle with which we set out, namely, the strict construction of such statutes, we can not give the construction to section 35, contended for by appellant.

We have thus concluded that said section 35 does not authorize a private sale of lands for delinquent taxes; and, if it did, there might be a question, under the following words in the section : . " and the clerk of said board " (of trustees) " shall perform the like duties, at said sale, as are required by the county auditor, at a sale for State and county taxes "—whether the clerk of the board of trustees of the town is not the proper officer to make the sale, instead of the marshal.

Nor do we think that the appellant, under the third paragraph of the complaint, is entitled to recover back the purchase-money he has paid, from the appellee. Per-

haps, if he has any remedy, it is against the town of Cambridge City; but, upon this point, we express no opinion, as there is no such question before us.

The judgment is affirmed, at the costs of the appellant.